IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.  Case No. 3:10mj399

KELVIN L. IRVING,

Defendant.

## MEMORANDUM OPINION

Before the Court is Defendant Kelvin L. Irving's Motion to Suppress and/or Dismiss. (Docket No. 6.) The United States has responded. (Docket No. 12.) On November 5, 2010, the Court held a hearing on the pending Motion. This matter is ripe for adjudication. The Court's jurisdiction is properly invoked under 18 U.S.C. § 3401.[1] For the following reasons, the Court GRANTS IN PART Irving's Motion to Suppress and/or Dismiss. Accordingly, the Court DISMISSES WITH PREJUDICE the Criminal Information against Irving (Docket No. 1) and DENIES AS MOOT Irving's request that evidence be suppressed.

### I. Procedural Background and Findings of Fact

**A.    Procedural Background**

On August 26, 2010, the United States filed a Criminal Information, charging Irving with driving on a suspended license, this being his second offense in ten years, in violation of 18 U.S.C. § 13, assimilating Va. Code § 46.2-301.

On October 20, 2010, Irving filed a Motion to Suppress and/or Dismiss. Irving seeks dismissal of the Criminal Information on the grounds that the Regimental Club parking lot

---

[1] On October 18, 2010, pursuant to 18 U.S.C. § 3401(b), Irving consented to trial before a magistrate judge and waived trial, judgment, and sentencing by a district judge. (Docket No. 7.)

cannot be considered a highway under Va. Code §§ 46.2-100, -301. In the alternative, Irving moves to suppress the evidence obtained pursuant to an alleged unlawful stop in violation of his Fourth Amendment rights.[2]

B. **Findings of Fact**

On November 5, 2010, the Court held a hearing on Irving's Motion to Suppress and/or Dismiss. Based on the evidence heard, the Court makes the following factual findings.

The Regimental Club parking lot on Fort Lee[3] has three entry and exit points, all connecting to C Avenue. Patrons utilize the parking lot on club nights, when the doors of the Regimental Club are open to military personnel and civilians. Soldiers also park their personally owned vehicles in the parking lot and then access training areas, located behind the parking lot, by foot. Military vehicles access these training areas using a separate entrance directly connected to C Avenue.

On July 31, 2010, at approximately 2:30 a.m., four officers from the Fort Lee Provost Marshal's Office, including Officer Brian Michaels, were working security at the Regimental Club. Officers are assigned to this duty on club nights to provide security. On club nights,

---

[2] The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

[3] The Regimental Club is on Fort Lee, Virginia, property administered by the Department of Defense within the special territorial jurisdiction of the United States and within the jurisdiction of this Court.

officers block off the two entry and exit points closest to the club entrance for emergency traffic only. Thus, only one entry and exit point remains open for patron use.

On July 31, 2010, three fights began around 2:30 a.m., the time at which the Regimental Club closed. The first fight involved at least twenty to thirty individuals and started at the front entrance to the club. Officer Michaels and the three other officers responded and eventually resorted to using pepper spray to end the fight and disperse the crowd. The second altercation involved a group of five to six individuals and was located at the corner of Eighth and C Avenues. Officers responded and resolved that incident. The third event involved a group of five to six individuals and occurred in the Regimental Club parking lot. One individual, after being attacked by others, armed himself with an aluminum baseball bat.

While Officer Michaels was responding to the third ruckus, he was distracted by another group of four or five individuals, including Irving, in the Regimental Club parking lot. These individuals were gathered around Irving's car, and one, not Irving, was causing a scene. Officer Michaels continually ordered this group to leave the parking lot. After exchanging words with another person in the group, Officer Michaels specifically ordered Irving to leave the parking lot and told him that he would remember Irving's plates. Officer Michaels observed the group enter Irving's vehicle and observed Irving drive toward the parking lot's only open exit. Officer Michaels then turned his attention back to the ongoing altercation involving a baseball bat, which was quieting down.

While still attempting to resolve the third fight, Officer Michaels heard someone yelling behind him. He turned to observe Irving's vehicle still circling through the parking lot, with a passenger apparently yelling out the window. Officer Michaels instructed another officer to stop

3

Irving's vehicle. Officers stopped Irving because Irving had failed to leave the parking lot after he was instructed to do so by an officer.[4] After the stop, Officer Michaels approached Irving and asked for his identification as well as identification for all the passengers. A subsequent VCIN check of Irving's license revealed that his license was suspended with notification. Officer Michaels cited Irving for Driving on a Suspended License, this being his second offense in ten years, and then released him.

## II. Analysis

The United States charged Irving with violating Va. Code § 46.2-301(B), which provides in relevant part that "no resident or nonresident . . . whose driver's license . . . has been suspended . . . shall thereafter drive any motor vehicle . . . on *any highway* in the Commonwealth until the period of such . . . revocation has terminated." *Id.* (emphasis added). Virginia law defines a "highway" as:

> the entire width between the boundary lines of every way or place open to the use of the public for purposes of vehicular travel in the Commonwealth, including the streets and alleys, and, for law-enforcement purposes, . . . the entire width between the boundary lines of every way or place used for purposes of vehicular travel on any property owned, leased, or controlled by the United States government and located in the Commonwealth.

*Id.* § 46.2-100. Thus, this Court must first determine whether the Regimental Club parking lot should be considered a highway under these Virginia statutes.

---

[4] In briefing, the United States contended the basis for the stop lay in Virginia Code § 18.2-407: "Every person, except the owner or lessee of the premises, his family and nonrioting guests, and public officers and persons assisting them, who remains at the place of any riot or unlawful assembly after having been lawfully warned to disperse, shall be guilty of a Class 3 misdemeanor."

4

It is well-settled that the "'true test of whether a way is a highway is whether the way or place of whatever nature is open to the use of the public for purposes of vehicular travel.'" *United States v. Scott*, 188 F. App'x 213, 215 (4th Cir. 2006) (*quoting Caplan v. Bogard*, 563 S.E.2d 719, 723 (Va. 2002)). Thus, to constitute a highway under Virginia law, a parking lot must meet two requirements: (1) it must be open to public use; and (2) it must be used for vehicular travel. *See United States v. Campbell*, No. 1:08mj457, 2009 WL 853973, at *1 (E.D. Va. Mar. 25, 2009).

On this record, the Court cannot make a finding that the Regimental Club parking lot is open to public use. First, the United States presented no evidence to the Court regarding whether Fort Lee was an open or closed base on July 31, 2010.[5] Second, the United States also failed to present any evidence as to who owns or maintains the Regimental Club parking lot, making it impossible to label the parking lot as public or private.[6] Instead, Officer Michaels testified that the parking lot is open to military personnel and their guests on club nights, and that it is used by military personnel to park their personally owned vehicles and access the training areas behind

---

[5] Both in its brief and at closing argument, the Government attempted to argue that Fort Lee is an open installation. However, when prompted by the Court, the Government could not point to any admissible evidence presented during the motion to suppress hearing to support that allegation. Instead, the United States suggested that courts have made that finding in other cases. While the United States Court of Appeals for the Fourth Circuit has previously held a road within Fort Lee to be a highway under Va. Code § 46.2-100, finding that the road was open to the use of the public for purposes of vehicular travel, this holding was based on specific factual findings made in 2006. *Scott*, 188 F. App'x at 215-16. This Court cannot assume that the same factual circumstances existed on January 31, 2010.

[6] During closing argument, the Government attempted to argue that the Army Morale, Welfare and Recreation Command runs and owns the Regimental Club, making it a public entity. However, the United States conceded during colloquy that it failed to offer any evidence to the Court to support such a finding.

5

the parking lot by foot.[7] Based on the limited evidence presented, the Court cannot find that the Regimental Club parking lot is open to public use and, thus, cannot find that the Regimental Club parking lot constitutes a highway under Virginia law.

Even presuming that the parking lot were open to public uses, this Court would find that the Regimental Club parking lot is not used, as defined by binding precedent, for vehicular travel. *See Campbell*, 2009 WL 853973, at *1. The word "travel" as used in the Virginia statute has been interpreted to mean "more than mere movement *per se*, . . . but movement from a point of beginning through the way or place to another point of destination." *Id.* In other words, "an essential characteristic of a 'highway' . . . is that it provide for movement between two places neither of which is part of the highway itself." *Id.* Applying this definition, the Court would find that the Regimental Club parking lot does not constitute a highway under Virginia law.

While the Regimental Club parking lot has three entry and exit points, all entry and exit points connect to the same road within Fort Lee, C Avenue. Thus, the parking lot does not provide "movement from a point of beginning through the way or place to *another* point of destination." *Id.* (emphasis added). Indeed, on July 31, 2010, only one manner of ingress and egress to the parking lot remained open during the time frame relevant here. Finally, while the United States argues that the parking lot provides access to training areas, it is undisputed that military vehicles use a separate road off of C Avenue to access the training areas. The parking lot is merely used by military personnel to park their personally owned vehicles to access the

---

[7] While Officer Michaels's testimony also included a general statement that the parking lot was open for public use, the Court finds this to be a conclusory allegation. Absent any foundational testimony, which Officer Michaels did not present, the record cannot support a general finding by this Court that the parking lot is open for public use.

training areas by foot, not through "vehicular travel." *Scott*, 188 F. App'x at 215 (*quoting Caplan*, 563 S.E.2d at 723). Based on these facts, the Court would find that the Regimental Club parking lot is not used to "provide for movement between two places neither of which is part of the highway itself." *See Campbell*, 2009 WL 853973, at *1. Thus, the parking lot would not constitute a highway under Virginia law.

### III. Conclusion

For the foregoing reasons, the Court GRANTS IN PART Irving's Motion to Suppress and/or Dismiss. The Court DISMISSES WITH PREJUDICE the Criminal Information against Irving (Docket No. 1) and DENIES AS MOOT Irving's request that evidence be suppressed.

An appropriate Order shall issue.

/s/ M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: November 10, 2010